# EXHIBIT 1

# Letters of Support

Letter #1

July 14, 2024

To the Honorable Timothy Kelly,

My name is Charles F Green III and I am Jacquelyn Starer's husband. I am 76 years old and have been married to Jackie since 1999. We have no children of our own, but I helped raise my stepson from Jackie's previous marriage since he was 10-11 years old. He is now 35 years old. I have included a picture from our 1999 wedding.



I was a mortgage banker for 30 years and rose to Vice-President of the mortgage bank where I worked in Stow, Ma. I am now retired but work a few hours per week at a local golf course when I am able.

I have been in recovery from alcohol for over 35 years and remain active in Alcoholic Anonymous. Jackie had her own problem with prescription medication dependence and depression, and I met her when she was hospitalized at Emerson Hospital in 1996 where I was a volunteer. I have watched and helped her throughout the years of her recovery and am extremely proud of her recovery and her extensive personal and professional work to assist other alcoholics/addicts in their recovery over the last 25 years.

I understand she has been charged with a serious crime and I was at home and answered the door when our home was raided by the FBI on or about 6 am December 27, 2022. I am writing this letter to ask the courts for leniency on her behalf.

I thought what transpired at the Capitol was wrong but had no advance idea of the events that would take place and neither did Jackie. She was very eager to go to the rallies that day to support President Trump. My thoughts were that she just needed to go and get it out of her system. She never discussed participating in any violence or illegal activity at the rally but went purely to support President Trump. I truly believe she got caught up in the events of the day and was not even aware at the time of much of what was occurring in and around other areas the Capitol that day.

In my opinion, Jackie deserves leniency form the court. She is a good person, hardworking, and idealistic. She has volunteered on community, state, and national levels. Locally, she advocated for sidewalks in the community, supported music education in the school, and contributed to the updating of the Ashland Master Plan.

She became very active in the medical addiction profession, especially advocating for pregnant women with addictions, and chaired a Women's Action Group as part of the American Society of Addiction Medicine which developed an updated policy on the treatment of pregnant women with opioid dependence and several

policy statements defending pregnant women from incarceration for substance abuse. She served as the President of the Massachusetts State Chapter Society of Addiction Medicine, served on numerous state and national committees, organized medical education events, and lectured widely on the topic of pregnant women with opioid dependence. Details are available in her attached resume.

Personally, she has supported me through numerous medical challenges over the years, including a heart attack, multiple trips to the emergency room for various conditions and prolonged hospitalizations for presumed bowel obstructions, eventually diagnosed as Crohn's disease, for which I now receive regular infusion treatment, as well as for lung disease, and cardiac surgery.

I have a lung disease called bronchomalacia which can allow my lungs to collapse more easily and collect mucous blockage and I also have sleep apnea which requires CPAP treatment. The bronchomalacia required a three-week hospitalization ultimately ending in a broken rib from chronic coughing and requiring two bronchoscopies before all the mucous plugs in my lungs could finally be cleared.

I was diagnosed with bladder cancer which seems to be in remission after infusion therapy and I am monitored for an aortic aneurism with regular ultrasounds and requires vigilance in treating my high blood pressure to prevent growth of the aneurysm.

Additionally, I experienced a severe fall with rupture of my patellar tendon while we were visiting friends in Texas several years ago. This accident required emergency surgery in Texas, postponement of our return trip, and had prolonged recovery and with physical therapy upon returning  home. I was unable to drive for a lengthy period.

More recently, just this summer 2023, I was hit in the side of my car by another vehicle and continue to struggle the remnants of extensive bruising, pain, and swelling of my left leg and am under medical care for this.  My knees both have severe arthritis, worsened by the car accident, and I have received three gel infusions to no avail. I have great difficulty with stairs and am unable to do simple tasks such as carry laundry baskets or other items up or down the stairs. Jackie has to fill in with these tasks.

I am completely unable to assist with any yard work or shoveling the walkway in the winter. Jacquelyn does all the gardening upkeep and landscape upkeep except for the weekly mowing which we hire out. In the winter, our driveway is plowed but Jackie shovels the walkway and clears snow from the mailbox.

We have anticipated that at some point, I may not tolerate two story living and we have already remodeled the downstairs to have a bedroom and added a walk-in shower to the bathroom. Both the extra room and the bathroom had the doorways replaced to accommodate wheelchair accessibility.

Jackie also manages our investment and retirement portfolio which we now rely on for monthly expenses since she has been deprived of her medical license, her job, and ability to earn any income.

As you can see, my age and health lead me to rely on her in these times and the future. In my condition, we never know when the next ball will suddenly drop. I would have extreme difficulty managing my own care if she were not available to help me. She assists in laying out my medications for the month of which there is an extensive list.

Previously, I was with Jackie when she cared for both her aging parents who lived in Wisconsin, and this required frequent travel back and forth and involved much stress. She has also been a wonderful mother to her son over the years. He now lives on his own and although they differ in their political outlooks, and their relationship is strained, they both work hard to put their relationship first and support each other. This relationship strain with her son has been most difficult for Jackie and has caused severe bouts of depression.

The last the 3 ½ years have been very challenging for the both of us and especially since her arrest in December 2022. She particularly has already suffered many losses, including most of her medical credentials and thus her ability to work and practice medicine or to continue caring for her patients. This has been devastating for her. Her personal and family relations have been strained and she tends to be isolated from friends and family. It has also been financially difficult for us, as we no longer have adequate monthly income to cover expenses and we must rely on social security and withdrawals from our retirement accounts.

She would very much like to regain her privileges to practice medicine and continue to care for those struggling with addiction, but this is unlikely if the outcome of these proceedings is not in her favor. At the very least, she would like to restore her reputation in the medical profession and in the community.

She realizes that she got herself into a very bad situation and broke the law which she regrets. She has no intention of being involved in any illegal political or criminal activity going forward. She is not a threat to society or any individual. She has been 100% compliant with the terms of her pre-trial probation, including regular drug testing and continuing with frequent therapy with her psychiatrist, going on 18 months now at the time of this letter. Her relationship with her psychiatrist preceded these events by about 20 years.

In conclusion, I am asking that Jackie be spared from any jail time. I do not see how this would be for the greater good of anyone and it would be very deleterious for me and for her son personally. She has paid a large price already. She prays daily for the country and has much to offer.

I wish I could accompany her to court to sit behind her in support, but I honestly would find the rigors of travel too difficult, including walking to the gates and around Washington DC. I would prefer she be able to focus on the court proceedings rather than need to assist me with wheelchairs for the long airport walks to the boarding gates and the other travel assistance I would require. But please know that I am there in spirit and 100% supportive of my wife.

Most respectfully,

Charles F. Green III

Letter #2


**Mass General Brigham**
Brigham and Women's Faulkner Hospital

BWH Brigham Primary Physicians Suite 4A
1153 CENTRE ST
STE 4A
BOSTON MA 02130
Dept Phone #: 617-983-7300
Dept Fax #:  617-983-7386

05/21/24

Re:
Jacquelyn J Starer, MD
23 Byron Rd
Ashland MA 01721

To Whom It May Concern:

Jacquelyn J Starer is a patient under my care.

Her current medical history and treatment is listed below:

**Patient Active Problem List**
Diagnosis
- Hypothyroidism
- Migraine
- Anxiety and depression
- Asthma
- Spondylolisthesis
- Labral tear of right hip joint
- Osteoarthritis of hip
- Degenerative lumbar spinal stenosis
- Status post left cataract extraction
- Small intestinal bacterial overgrowth (SIBO)
- Gastroesophageal reflux disease without esophagitis
- Esophageal spasm
- Primary osteoarthritis of both knees

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • ABDOMINAL SURGERY | | 2011, 1988 |
| *cesarean, myomectomy, cholecystectomy* | | |
| • BACK SURGERY | | |
| • BREAST SURGERY | | |
| • CESAREAN SECTION | | |
| • CHOLECYSTECTOMY | | |
| • COSMETIC SURGERY | | |
| *breast implants* | | |
| • HIP ARTHROSCOPY | Right | 2011 |

*grade 3 changes*
- HYSTERECTOMY                                                                          myomectomy
- HYSTEROSCOPY W/ POLYPECTOMY
  *benign*
- LAMINECTOMY
  *S/P Laminectomy; lumbar spine*
- LAMINECTOMY LUMBAR SPINE WITH FUSION ONE          N/A          8/18/2021
  LEVEL
  *Procedure: LAMINECTOMY LUMBAR SPINE WITH FUSION L2-L3, WITH REMOVAL OF*
  *HARDWARE L3/4;  Surgeon: Louis George Jenis, MD;  Location: NWH OR;  Service:*
  *Orthopedic Surgery*
- RHYTIDECTOMY                                                                          2000
  *Face Lift*
- SKIN BIOPSY                                                                            2-3 years
  *no cancers*
- TONSILLECTOMY                                                                         in the 80's
- UNCODED SURGICAL HISTORY
  *S/P Spinal arthrodesis - L3-L4 XLIF post instrumentation*


**Current Outpatient Medications Ordered in Epic**

| Medication | Sig |
| --- | --- |
| • atenolol (TENORMIN) 50 mg tablet | take 1 tablet daily |
| • clonazePAM (KLONOPIN) 0.5 MG tablet | Take 1 tablet (0.5 mg total) by mouth 2 (two) times a day as needed for anxiety. |
| • desvenlafaxine succinate (PRISTIQ) 50 MG 24 hr tablet | Take 50 mg by mouth daily. |
| • famotidine (PEPCID) 20 MG tablet | Take 20 mg by mouth. |
| • fluticasone propionate (FLOVENT HFA) 110 mcg/actuation inhaler | USE 2 INHALATIONS TWICE A DAY |
| • lamoTRIgine (LAMICTAL) 5 MG TChD | Take 5 mg by mouth. (Patient not taking: Reported on 2/6/2024) |
| • levothyroxine (SYNTHROID, LEVOTHROID) 175 MCG tablet | take 1 tablet every morning |
| • loratadine (CLARITIN) 10 mg tablet | Take 10 mg by mouth daily. |
| • miscellaneous medical supply Misc | 1 tablet by Miscellaneous route daily. COMPOUNDED ESTROGEN PROGESTERONE CREAM |
| • modafinil (PROVIGIL) 200 MG tablet | Take 100 mg by mouth daily. |
| • nitroglycerin (NITROSTAT) 0.4 MG SL tablet | Daily as needed for stomach spasms. |
| • omeprazole (PRILOSEC) 40 MG capsule | Take 40 mg by mouth. |
| • PROAIR HFA 90 | USE 2 INHALATIONS EVERY 6 HOURS AS |

| | |
|---|---|
| mcg/actuation inhaler | NEEDED FOR WHEEZING |
| • topiramate (TOPAMAX) 25 MG tablet | Take 1 tablet (25 mg total) by mouth daily. |
| • traMADoL (ULTRAM) 50 mg tablet | Take 1 tablet (50 mg total) by mouth every 8 (eight) hours as needed for pain (specific location in comments). |

Please feel free to contact the office if further information is required for your review.

Sincerely,

Linda A.Lauretti, MD

Letter #3

Christopher R. McKinney

249 Riverlin St

Millbury, MA 01527

May 8, 2024

To the Honorable Thomas Kelly

**RE: Character reference for Jacquelyn Starer**

My name is Christopher McKinney and I was a patient of Dr. Starer's outpatient opiate use disorder practice from 2018 until she surrendered her medical license in December 2022.

While I have only known her in a professional context, the cumulative time we've spent together in group & individual sessions gives me confidence to attest to her professional demeanor.

Dr. Starer has always presented as a caring, empathetic, well-mannered professional. Her note taking was very detailed, and she would follow-up on any concerns raised in a previous session.

Treating addicts in recovery felt like a very personal passion for her – it was obvious that she had a bond with each of her patients. I often commented how there was enough demand that she could dramatically expand her operation, but she seemed much more interested in keeping the group small and personal vs. trying to maximize financial gain.

Knowing the importance of human connection to recovery, she started a group with her patients – she would have speakers come in from outside to share their experience with the group, and then there would be discussion while she saw her patients individually. For some patients this was the only AA/NA recovery activity they partook in, so it was of special benefit for them.

I'm aware of the gravity of her charges and learning of them was deeply distressing to me - however- from my perspective as a pacifist who also believes in accountability, I don't believe jail time would serve any benefit in this case.

The loss of her livelihood (in a profession with critical shortages), along with the public condemnation/harassment when the charges came to light should satisfy the punitive nature of any sentence. Instead, her experience treating addicts could be utilized in some community service program to repay the "debt" to society.

I truly appreciate the time you've taken to read this.

Yours sincerely

*Christopher R. McKinney*

Letter #4



**Massachusetts Psychiatric Services**
258 Main Street
Sturbridge, MA 01566

**Phone: 508.418.6888**
Fax: 508-418-6886

August 28, 2024

To the Honorable Timothy J. Kelly:

My patient, Jacquelyne Starer, has asked me to write this letter documenting her treatment with me. I am aware that it will be submitted by her lawyers at her sentencing.

I began to treat Dr. Starer in June 2004, providing medication management and psychotherapy with meetings ranging from weekly to monthly depending on her needs and our mutual availability for appointments. She has attended regularly without missing appointments and makes use of the time to discuss a wide range of issues. As you are likely aware, she came to me after having been referred by Physician Health Services, a division of the Massachusetts Medical Society which provides support for physicians with substance use problems. Dr. Starer self-referred to this program when she began to struggle with substance use but by the time she was referred to me though that program, she had been clean and sober for 7 years and continues now to make use of AA regularly.

Her formal diagnosis from me is major depressive disorder, recurrent, moderate. It has been in full remission or partial remission most of the time I have treated her but she has also had full blown episodes of major depression.



Massachusetts Psychiatric Services
258 Main Street
Sturbridge, MA 01566

**Phone: 508.418.6888**
Fax: 508-418-6886

In terms of her medication, we have found over the years that she is very sensitive to both side effects and benefits of medication, and has often had unusual side effects, so she has had difficulty preventing recurrences of her mood than other patients I treat.

In terms of her therapy, we have worked on a wide variety of issues in areas that are common for women in medicine, including managing bureaucratic frustration, managing power dynamics in a workplace, tolerating frustrating circumstances with patients and other care team members, issues related to working within organizations that provided inadequate care and how much to tolerate, etc. She also shared her joy and passion in her transition from being an ob-gyn to a physician who specialized in addiction medicine, especially addiction medicine in pregnant patients, and getting board-certified in that field. Frankly, she taught me a lot about this area of medicine and her enthusiasm and sense of mission was infectious.

We also worked on long-standing issues she had with her husband in a stable marriage. More recently we have worked on the fallout in her life from her actions on January 6th, and conflict she has with her son over the current Middle East conflict.

Throughout her treatment she has been actively engaged in self-exploration and has striven to make herself and the world a better place.

Based on my 20-year treatment history with Dr. Starer, I can predict that she will remain committed to ongoing mental health treatment.

Thank you for your consideration in this matter,

Virginia Merritt MD

Board Certified Psychiatry and Child and Adolescent Psychiatry

Letter #5

May 10, 2024

Cecilia M. Pick, Ph.D.
7426 SW 32nd Avenue
Owatonna, MN 55060

To the Honorable Timothy Kelly,

My letter is regarding Jacquelyn Starer, M.D., whom I have known since we were in junior high school in Shorewood, WI. She is my sister's best friend, and with me being a year younger, I was the "little sister" up through our college years at the University of Wisconsin – Madison. While I was a Fulbright Teaching Assistant in Germany, "Jackie" was my travel companion during my school's spring break. We also saw each other while I was in the Germanic Studies program at the University of Texas at Austin and during her early years in Boston. Most recently, I was able to spend some time with Jackie while she attended a medical conference in New York City.

Please allow an anecdote or two. Having taken lessons from an aunt in Milwaukee, Jackie plays accordion and she occasionally breaks it out to entertain her friends. She and I were bridesmaids at my sister's wedding in the 70's. Jackie and her husband, Chuck, traveled all the way to Minnesota to attend my wedding in 2008. She so thoughtfully gifted us with a copy of The Settlement Cook Book, which she knew was my German grandmother's standby.

Jackie and I share in-depth knowledge and personal experience in two areas that have shaped our lives. We have both studied German language and history. We have both been personally affected by the persecution of Jews before and during WWII. Jackie's father had to flee Austria to escape almost certain death. My own Jewish great uncle was arrested at his home and died days later in a Berlin prison.

My siblings and I consider Jackie a close family friend. Perhaps this means more because she was an only child with a Jewish father and a Gentile mother, which was not common where we grew up. I know her to be a very bright and good person, who is dedicated to the medical profession. In my view, Jackie's participation in the January 6th attack on the Capitol Building was a case of poor judgment, and I know that she has been charged with a serious offense. But I do not think that she should go to prison. She would better serve her family and society in living at home. Her husband, Chuck, is ill and needs Jackie as his daily caretaker. In the future, Jackie should continue to use her professional expertise in working with people who suffer from substance abuse. Practicing medicine would be positive and productive for both Jackie and her patients.

Sincerely,

C Pick

Cecilia Pick, Ph.D.

Letter #6

William E. Pick
16211 25th Avenue SW
Burien, WA 98166
206 293 6655
Wp12feb2021@gmail.com

May 14, 2024

Re:    People versus Jacquelyn Starer

Honorable Timothy Kelly:

I, William Pick, for the past 35 years, have enjoyed a career in a US airlines maintenance and engineering department, and supporting airline manufacturing customers. As a result of having a wonderful parents and family, I earned two Federal Aviation Administration (FAA) certificates, a bachelor and master degrees.

I've known Jacquelyn Starer (Jackie) since my parochial school childhood days, and as a family friend. While I was in grade school, my older sister's classmate, Jackie, studied at our home. We've shared an interest in music, dancing, and health care industry during high school, college. Jackie is a musician too. She brings joy to others playing cultural songs with her accordion.

She naturally cares for others well-being. She worked as a Milwaukee WI Lake Michigan lifeguard. I think that behavior, along with her professional work life as an obstetrics/gynecology and addiction medicine best represent her character.

Jackie acknowledges and regrets her past decision to participate in the protest. She recognizes now that the charges are a serious crime. She had lost her own business, and is alienated from former coworkers and friends.

She is her husband's primary care giver. And being home is necessary to support him. Would you please have compassion on her and her family? I plea for your mercy by deciding she has no jail time sentencing *or* limiting her judgment to community service and probation. She could help pay her debt to society by some community service, especially if she could be allowed to continue to serve patients with substance abuse.

Sincerely,

William E. Pick

Letter #7

September 2, 2023

Re: *United States of America v. Jacquelyn J. Starer* (1:23-cr-00260-TJK-1)

Judge Kelly:

I write as a longtime friend of Jackie Starer's. I graduated from the University of Wisconsin in 1979 with double majors in journalism and American history, after which I became a professional journalist for 11 years. From 1988 to 1990, I attended the Wharton School of Business's Executive MBA program, after which I changed careers and became a securities analyst and portfolio manager, and prior to my retirement I served on the board of directors of a telecommunications equipment company.

This letter is to attest to Jackie's character. We went to high school and college together, and she and one of my brothers dated in high school and college. She was a frequent guest in our house. I knew her to be intelligent, well-mannered, generous in spirit, and even-tempered. She was patient (which required a lot with me when we played chess in our living room), empathetic, and even indulgent at times in recognition of my own rather chaotic home life.

This is to say that, having known her for so long, I was surprised by the actions that led to her arrest and prosecution. I recognize that she has been charged with a serious crime, yet I wanted to present you with a fuller picture of the woman who not only has been a personal friend of many years, but one who regularly visited and comforted my mother in her assisted living facility prior to her passing in 2011.

In adulthood, Jackie became a doctor and did much good work in Boston, offering medical services of various kinds to people who were indigent, despised, ignored, feared, and worse. She has helped the kinds of people who I haven't helped, and who in many cases I wouldn't have approved of, drug addicts being a prime example.

The Hippocratic Oath does not allow doctors to reject patients who fall short of social standards, but to me, it is a mark of character that someone would minister to the outcasts, and do so on a voluntary and uncompensated basis. So, in a very real sense, I consider Jackie to be a better person than me.

Life is a funny old dog. We live in an engineering age that pushes us toward precision and purity of thought and action. But the reality is that we are all mixed bags. We will leave this life with a balance sheet, and if there is a judgment day as my Catholic upbringing taught, God will look at all of it and make the call. I cannot presume to play God but can only say that I regard Jackie as a member of the Brotherhood of the Civilized, and pray that God will agree.

I return to the Jackie Starer I grew up with, a woman who managed to put aside whatever biases or judgments she might have had and reach out in a spirit of goodwill and treat people in the way that she would want to be treated herself. It's the ancient law of reciprocity that underlies the charity and selflessness that, for all of society's arguments, we still hold dear and which is a cornerstone of many religious traditions. None of this is any sort of political statement, but reflects only my deep appreciation for her character, seriously flawed as her actions were.

Jackie Starer has been a healer of the sick, including the poor and discarded, throughout her adult life, which to me is one of the highest of life's callings. I hope you can temper justice with mercy by keeping her out of prison, and find a way for a healer to keep healing. I would add that, if you would search the public records, you would find that, over the years, I have been a significant contributor to

liberal candidates and causes. Yet, I have friends from all political camps. This it therefore not an appeal from one of Jackie's political allies, but one from someone who has known her for years and who can see beneath the surface. I hope you will consider my words in considering her sentence.

Respectfully submitted,

Charles Pluckhahn
2 Osborne Rd.
White Salmon, WA 98672
cpluckon@gmail.com

Letter #8

Honorable Timothy Kelly,

My name is Marina Schwartzman,
I am a friend of Jacquelyn Starer. You will be presiding over her case.
We met a few years ago at the gym and after engaging in a small conversation we realized that we have a lot of common interests. We both like dancing, a healthy lifestyle and the theater. We have been seeing each other a few times every week and there was always something to talk about, if it's our favorite classes, music, movies or sharing our upbringing and our family history. Since I came to the United States as a Jewish refugee, Jackie told me the story of her own father and his family who escaped Nazi antisemitism in Europe and it was one more thread that connected us.
I knew that she changed her career from being an obgyn doctor to an addiction specialist. One time, my friend was looking for a solution for her husband suffering from alcoholism, so I mentioned that to Jackie, who at this time was going through a big physical pain herself that required a surgery, and she selflessly said that she will try to help. The same is at the gym, if someone is hurt during the class Jackie is always first to the rescue. I really enjoy speaking with her and asking advices on some personal matters.
Jackie is a kind, intelligent woman, my older, wise friend who I can rely on. I understand that she is being charged with the serious crime, but I'm urging the court not to include a prison sentence, I specifically state my opinion, that Jacquelyn is not a dangerous, absolutely not violent, but a polite and genuinely good person.

Sincerely,

Marina Schwartzman

Letter #9

February 21, 2024

Character Witness for Jackie Starer MD

I understand that Jackie Starer has been accused of a serious crime and may face significant prison time. I do not know the details of her case, but I am not a Trump supporter and do not think that the 2020 election was stolen. I am writing to describe Dr. Starer to the court, describe her as I have known her, primarily as a professional colleague and as a physician champion for pregnant and parenting people with addiction.

Jackie and I were amongst the first physicians in the US to be boarded in both OBGYN and Addiction Medicine. In 2009, with 3 other physicians, we established the "Women's Action Group" – a work group within the American Society of Addiction Medicine (ASAM) dedicated to education, research, and clinical care related to gender and substance use and use disorder. I was the first chair of the group and she was the second. She grew the group incredibly and was critical in its early success. Today there are over 2,000 on our list serv and over 500 active members. This would not have happened without Jackie's early involvement.

Jackie and I have presented at medical society conferences together, overlapped service on taskforces, worked with and represented ASAM at both the State and Federal levels, and coauthored two important papers: 1) the first every public policy statement by ASAM on addiction (which was also approved by the American College of Obstetrician Gynecologists), and 2) a clinical guidance document that emerged from a CDC-led workshop on the care of pregnant people with opioid use disorder. She is recognized nationally as an expert in the clinical care of pregnant and parenting people with substance use disorder and has been integral to public health in Massachusetts. She served as both Chair and on the Board of the MA Chapter of ASAM, served for almost a decade on the MA maternal mortality committee, provided expertise to MA Department of Public health in the care of substance-exposed newborns, and helped develop state-wide protocols for pregnancy care.

Jackie has served people with addiction, especially pregnant people, with compassion and evidence. She has brought science and hope to people, particularly in Massachusetts, who had been denied both.

I know her to be an empathetic, smart, and hard-working person who believes in making the world a better place. Her lifetime of service, her pioneering clinical work, her professional, kind, and collaborative spirit, all are essential facets of her humanness, a humanness that I ask the court to not deny.

Sincerely,

Mishka Terplan MD MPH FACOG DFASAM
Medical Director and Senior Research Scientist, Friends Research Institute
Adjunct Faculty and Substance Use Warmline Clinician, University of California, San Francisco

Letter #10

Alan A. Wartenberg, MD. FACP, DFASAM
32 Trout BrooK Lane
Hope, Rhode Island 02831
May 8, 2024

Daniel J. Cappetta, Esq.
Cappetta Law Offices
150 Speen Street
Suite 201
Framingham, MA 01701

RE:  Jacquelyn Starer, MD, FACOG, FASAM

Dear Mr. Cappetta:

I am writing this letter as a character witness for Dr. Starer, whom I have known for over 20 years, as a colleague, clinical collaborator, co-member with Dr. Starer in both the American Society of Addiction Medicine (ASAM), and specifically in the Massachusetts ASAM chapter. I have also known her personally as a friend and as someone who has been deeply committed to improving the care received by pregnant and parenting women for substance use disorders (SUDs).

When I first met Dr. Starer, she was transitioning from the practice of Obstetrics/Gynecology to that of Addiction Medicine physician.  I was the Medical Director of the Faulkner Hospital Addiction Recovery program (ARP).  The ARP was one of the most significant treatment programs in the Boston metropolitan area, in large part because of our involvement in training medical, family practice and psychiatric residents on hands-on management of patients with substance use disorders.  There had been relatively few OB/GYN physicians with both interest and expertise in treating pregnant, peri-partum and parenting women, and Dr. Starer made great contributions to these patients, our trainees and the Addiction Medicine field in general. In some part due to Dr. Starer's involvement 20 years ago, a considerable number of her colleagues has joined her in developing skills and knowledge in this topic area.

Dr. Starer has made significant contributions to the education of and literature in the OB/GYN connection with SUDs. She has also worked as part of organized medicine, through the Massachusetts Medical Society, MASAM and the OB/GYN Society, to disseminate important information about the proper diagnosis and management. Including culturally sensitive and empathic care.  Much of this work is voluntary, and very few of us receive any recompense other than the satisfaction of helping people, many of whom are from marginalized communities,  including people of color, immigrants those with significant co-occurring medical and psychiatric conditions.

Dr. Starer has worked in many settings, including Faulkner Hospital, and has treated large number of patients with compassion, empathy and skill, regardless of their socio-economic or other status. I have served as her mentor and clinical supervisor, and later as a colleague and friend. I left Faulkner Hospital in 2005 and moved to Rhode Island in 2016, and thus have had less regular contact with Dr. Starer, but I continue to hear from her, and I maintain contact with MASAM and attend its conferences from time to time. Dr. Starer and I both served as President of that organization, as well as its Educational Coordinators in the past.

I have long been aware of Dr. Starer's conservative political leanings, and my own leanings have been considerably to her "left." We have not allowed those differences to affect our relationship or ability to collaborate. I was surprised and disheartened to learn of her involvement in the January 6, 2021 Capitol riot, and in particular the criminal charges she now faces. While I have no direct knowledge of her activities, I do believe that it represents a departure from her usual calm and controlled demeanor. Unfortunately, many people on the "right" side of the political spectrum believed the misinformation about the election and took actions that were in stark contrast to their usual behaviors.

It is my hope that justice will be tempered with mercy in this matter, and that Dr. Starer's long history of selfless service to the population we both serve, those with Substance Use Disorders, can be taken into account when this matter is judged. I think that allowing Dr. Starer to provide care to imprisoned/uninsured women with SUDs would be far more valuable to society than incarcerating her. I would be very willing and able to have further discussions on this matter, or to give testimony during the legal proceedings.

Please feel free to contact me with any questions or comments.

Sincerely.

Alan A. Wartenberg, MD, FACP, DFASAM

Letter #11

Mass General Brigham Community Physicians – Concord
80 BEHARRELL ST
CONCORD MA 01742
Dept Phone #: 781-259-9292
Dept Fax #:  781-259-0747

April 24, 2024

Patient:     **Charles F III Green**
MR Number: **60378**
Date of Birth: **4/27/1948**
Date of Visit: **4/24/2024**

To whom it may concern;

My patient, Charles F. Green [dob 4/27/1928], has multiple complex medical problems that preclude his ability to attend proceedings of any length and requiring travel.  He has Coronary  Disease on nitroglycerin with history of prior Heart Attack and Congestive Heart Heart Failure and frequent PVCs, COPD, Obesity and Sleep Apnea, High Blood Pressure and Cholesterol as well as Hypothryoidism all made worse of an MVA (motor vehicle accident last year) aggravating his bilateral osteoarthritis of both knees. He has additional major stressors regarding his wife's legal situation, all of which stand to potentially affect his remarkably successful years in recovery from alcoholism.
Please excuse him from any required attendance for all of the above reasons.
Thank you in advance for your interest in the care of my patient, and contact me if I can be of any further help in this matter

Kind regards,

Lynn Weigel MD

Letter #12

**THOMAS K. ZANDER**
P.O. Box 105
Oldsmar, Florida 34677-0105
*Voice:* 813.699.9718
*E-mail:* TomZander@aol.com

July 18, 2023

Re:    *United States of America v. Jacquelyn J. Starer* (1:22-mj-00278)

Your Honor:

I am a semiretired lawyer and adjunct professor of law at Marquette University Law School.  I am also a semiretired clinical and board-certified forensic psychologist.  *See, e.g.:* https://law.marquette.edu/faculty-and-staff-directory/thomas-zander.  However, at the outset of this letter, I wish to make it clear that I am not writing as a lawyer, professor of law, or as a psychologist, but rather as longtime friend of the defendant, Jacquelyn Starer [hereinafter: "Jackie"].  The focus of my letter will be on my friendship with Jackie when we were in our adolescent and early adult years, because that was the period in our lives in which we had the most contact.  I assume that others will speak to their personal and professional interactions with Jackie in her later years.

Jackie and I met when we were in the 7th grade at what was then called Shorewood Junior-Senior High School, located in a suburb of Milwaukee, Wisconsin. We were friends throughout high school. The friendship we developed as early adolescents was natural, because we had so much in common.  Both of our fathers were immigrants to the U.S., having fled the rise of Hitler and Nazism.  We had a similar sense of humor.  In high school, we took many of the same classes and often sat together, enjoying each other's wit and humor.  Our high school grade-point averages were identical, putting us on stage together as co-salutatorians at our graduation ceremony.  Our friendship continued when we attended the University of Wisconsin as undergraduates, as it did when I attended the University of Wisconsin Law School, while she attended the University of Wisconsin Medical School.  During our years together at the University of Wisconsin, we often attended the same social events, always enjoying each other's company.



*Jackie Starer and Thomas Zander prior to the 1979 commencement ceremony at which Jackie was conferred her M.D.*

I earned my J.D. at the University of Wisconsin Law School in 1977 and Jackie earned her M.D. at the University of Wisconsin Medical School in 1979.  A tradition for prospective UW-Medical School graduates is to be escorted onto the commencement ceremony stage by someone already holding a doctoral degree.  This role is typically filled by an older relative of the medical school graduate, a faculty member, or the graduate's family physician.  But Jackie chose me for the honor of being her commencement ceremony escort.  Thus, we both launched our careers as professionals, with Jackie going on to do her residency in obstetrics-gynecology in San Antonio, Texas and me continuing the work I had begun two years earlier as a public interest lawyer representing low-income clients in Milwaukee.  In the decades that followed, Jackie and I kept in touch and often saw each other when she would return to

*Page 1 of 2*

*United States of America v. Jacquelyn J. Starer* (1:22-mj-00278)
Submission by Thomas K. Zander
July 18, 2023

Milwaukee to visit her parents and for high school reunions. In later years, we would keep in touch through texting and emails.

In the 57 years of my friendship with Jackie Starer, I have known her to consistently be a person of high intelligence, high moral character, and compassion for others. The foundation of our friendship was our shared convictions in honesty and helping those who are less fortunate. Those are the moral convictions that drove me to be a public interest lawyer and a forensic psychologist with a *pro bono* practice. Those values led Jackie to be a physician to disadvantaged patients, such as pregnant women who struggle with substance abuse. Jackie and I often disagreed on matters of politics. But we nevertheless respected the sincerity of each other's convictions. We never let our political differences jeopardize our longtime friendship.

Since Jackie's arrest on the above-referenced criminal charges, she and I have carefully avoided discussing details of the case. My role has been limited to being her supportive friend. However, from what I know of Jackie's alleged conduct from the Statement of Facts filed by the Government, I perceive it as a few impulsive moments of terribly bad judgment. It is my hope that those moments of bad judgment and misconduct will not unduly overshadow her otherwise honorable 69-year lifetime. In my personal opinion, imprisoning Jackie as she approaches her 70's, would be disproportionate to the gravity of her first-time offense. A more appropriate sentence would be probation with conditions that would allow her to repay her debt to society in a way that would serve the interests of justice.

Respectfully,

Thomas K. Zander